```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3-21-14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
CITIGROUP GLOBAL MARKETS INC.,      :
                                    :
      Plaintiff,                    :
                                    :             13 Civ. 8558 (JSR)
      -v-                           :
                                    :             OPINION AND ORDER
ALL CHILDREN'S HOSPITAL, INC.,      :
                                    :
      Defendant.                    :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

      Plaintiff Citigroup Global Markets Inc. ("Citigroup") seeks

declaratory judgment and injunctive relief against defendant All

Children's Hopsital, Inc. ("ACH") to enjoin ACH from pursuing an

arbitration brought by ACH in Florida. See Compl. ¶¶ 1-7, ECF No. 1

(Dec. 2, 2013). That arbitration was initiated by a Statement of

Claim filed by ACH on September 30, 2013 before the Financial

Industry Regulatory Authority ("FINRA"), captioned All Children's

Hospital, Inc. v. Citigroup Global Markets Inc., FINRA No. 13-02900.

See Compl. Ex. A. The arbitration asserted claims arising from the

market failure of more than $90 million in auction rate securities

(a variant of corporate bonds) issued under a Broker-Dealer

Agreement (the "Agreement") executed by the parties on September 1,

2007.

      By its instant Complaint, Citigroup contends that the

arbitration is barred by the forum-selection clause contained in

Section 5.10 of the Agreement entitled "Governing Law; Jurisdiction;

Waiver of Trial by Jury." Subsection (b) of that Section reads, "The

                                    1

parties agree that all actions and proceedings arising out of this
Broker-Dealer Agreement or any of the transactions contemplated
hereby shall be brought in a New York State Court or United States
District Court, in each case the County of New York and, in
connection with any such action or proceeding, submit to the
jurisdiction of, and venue in, such County." Compl. Ex. B at 15
(Agreement § 5.10(b)). Section 5.10 also contains language, not here
in dispute, electing New York law to govern the Agreement, waiving
the defense of forum non conveniens, consenting to service of
process electronically, and waiving the right to trial by jury. See
id. at § 5.10(a), (c)–(e). The Agreement further contains a merger
clause, which provides that the "Agreement, and the other agreements
and instruments executed and delivered with the issuance of the
Bonds, contain[s] the entire agreement between the parties relating
to the subject matter hereof, and there are no other
representations, endorsements, promises, agreements or
understandings, oral, written or inferred, between the parties
relating to the subject matter hereof." Id. at § 5.5.

    ACH acknowledges that any lawsuit it might bring against
Citigroup must be brought in the County of New York, but contends
that the arbitration it initiated in Florida does not fall under the
ambit of "all actions and proceedings arising out of" the Agreement,
and that arbitration, as the default process for resolving disputes
under FINRA Rule 12200, therefore remains a viable option.
Citigroup, by contrast, contends that the arbitration falls squarely

within the forum-selection clause of the Agreement, which, with the merger clause, forecloses the arbitration brought by ACH.

In addressing this dispute, the Court is fortunate to have sound guidance from three other judges in the Southern District of New York who have considered the precise question at issue here. Each arrived at the same position that Citigroup here espouses and therefore enjoined the pursuit of arbitration as prohibited by similarly worded forum-selection clauses. See Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth., 922 F. Supp. 2d 435 (S.D.N.Y. 2013); Citigroup Global Mkts. v. N. Carolina Mun. Power Agency, 13 Civ. 1703 (JMF), ECF Nos. 29, 30 (S.D.N.Y. May 10, 2013); Goldman, Sachs & Co. v. N. Carolina Mun. Power Agency Number One, 13 Civ. 1319 (PAC), 2013 WL 6409348 (S.D.N.Y. Dec. 9, 2013).

The Court agrees with these three other decisions that the instant issue is governed by Applied Energetics, Inc. v. Newoak Capital Mkts., LLC, 645 F.3d 522 (2d Cir. 2011), which held that an agreement's merger clause and a forum-selection clause that required adjudication operated to displace a previous or background agreement to arbitrate. The agreement in Applied Energetics, like the Agreement at issue here, did not expressly prohibit arbitration or make any reference to arbitration. Instead, it provided that "[a]ny dispute arising out of this Agreement shall be adjudicated" in New York, id. at 523, and this broad and exclusive language distinguished it from the non-exclusive clause that had been read to complement a previous agreement to arbitrate in Bank Julius Baer &

Co., Ltd. v. Waxfield Ltd., 424 F.3d 278, 282 (2d Cir. 2005) (in which a subsequent agreement's "rights and remedies" were expressly "cumulative and not exclusive of any rights or remedies provided under any other agreement," including the previous agreement to arbitrate).

Here, the plain language of the Agreement is even more all-inclusive than the language in Applied Energetics ("all actions and proceedings") and equally mandatory ("shall be brought" in a New York court) (emphases added). When combined with the comprehensive merger clause in Section 5.5, Section 5.10 of the Agreement unequivocally and exclusively requires adjudication in a New York court of all disputes arising out of the Agreement and therefore clearly displaces the background FINRA arbitration rule. See Phillips v. Audio Active Ltd., 494 F.3d 378, 386–87 (2d Cir. 2007) (obligatory and exclusive language in forum-selection clause precludes parties from pursuing alternatives).

Against this conclusion, ACH offers three principal arguments: (1) that the phrase "actions and proceedings" is narrow and does not encompass arbitrations at all, such that the Agreement and FINRA rule can be read to complement each other; (2) that the subject of the arbitration does not "aris[e] out of" the Agreement; and (3) that this Court lacks authority to grant the injunction sought by Citigroup. None of these arguments has merit.

ACH's first argument raises the linguistic question of whether an arbitration falls under the umbrella of "all actions and

proceedings." These are capacious words. In Black's Law Dictionary, the many entries under "action" span nine columns across five pages and those for "proceeding" take an entire page. See Black's Law Dictionary 32–36, 1324 (9th ed. 2009). When conjoined together and modified by "all" — i.e., "all actions and proceedings" — the words appear maximally all-inclusive.

In response, ACH offers a citation to the New York Code of Civil Practice Law and Rules, which provides that New York's state courts have two kinds of cases, actions and special proceedings, see N.Y. C.P.L.R. § 103(b), leading at least one lower New York court to state, "An arbitration is not considered an action or a proceeding" under the C.P.L.R.'s forms of procedure. Int'l Union of Operating Eng'rs, Local No. 463 v. City of Niagara Falls, 743 N.Y.S.2d 236, 238 (N.Y. Sup. Ct. 2002). Because the parties elected New York law to govern the Agreement, ACH urges that the reference to "all actions and proceedings" must therefore be read in light of the C.P.L.R. to refer only to judicial actions and proceedings, exempting arbitrations outside the courts' ambit from falling under the forum-selection clause. Further, if arbitrations were included within "all actions and proceedings," ACH argues, the phrase would be awkward, because it would require arbitrations to be "brought in a New York State Court or United States District Court," when, of course, arbitrations are not brought in any court.

But the C.P.L.R.'s use of "actions" and "special proceedings" to define state-court procedure does not mean that there are no

other types of actions and proceedings that fall within the
Agreement's phrase "all actions and proceedings." Indeed, the
C.P.L.R. itself elsewhere refers to an "arbitration proceeding." See
N.Y. C.P.L.R. § 7505. And courts from New York courts to the U.S.
Supreme Court routinely refer to arbitrations as "proceedings." See,
e.g., 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 269 (2009)
(discussing an "arbitral body conducting a proceeding") (internal
citation omitted); City of New York v. Uniformed Fire Officers
Ass'n, Local 854, IAFF, AFL-CIO, 699 N.Y.S.2d 355, 357 (1st Dep't
1999) ("Normally, a party to a valid arbitration agreement is
required to submit to arbitration and to defer any challenge to the
proceeding until an award is rendered . . . ."). Indeed FINRA itself
refers to Rule 12200 arbitrations as "proceedings." See, e.g., FINRA
Rules 12208, 12400, 12405, 12606. Finally, ACH's own Statement of
Claim that initiated the arbitration hereby enjoined prayed for
relief "after due proceedings had" and sought "costs of prosecuting
this action." Compl. Ex. A at 18. None of this is surprising given
the capacious nature of both words. As for the substitution of
"arbitration" for "actions and proceedings" leading to the illogical
outcome of an arbitration being "brought" in a court, this is
"little more than a linguistic trick." Golden Empire, 922 F. Supp.
2d at 442.

Turning from text to purpose, ACH urges that because public
policy favors arbitration, a rule of construction should apply to
permit arbitration to survive despite the exclusive, mandatory

language of the forum-selection clause. Indeed, this kind of heavy favoring of arbitration explains the contrary conclusions reached by several courts outside the Second Circuit, each of which would apply something like a clear-statement rule requiring any waiver of arbitration to say so specifically. See UBS Fin. Servs., Inc. v. Carilion Clinic, 706 F.3d 319, 328, 329 (4th Cir. 2013) (to displace background arbitration rule, subsequent agreement "must be sufficiently specific," and "one would reasonably expect that a clause designed to supersede, displace, or waive arbitration would mention arbitration"); UBS Sec. LLC v. Allina Health Sys., No. 12 Civ. 2090, 2013 WL 500373, at *6 (D. Minn. Feb. 11, 2013) (following Carilion); Goldman, Sachs & Co. v. City of Reno, No. 12 Civ. 327, 2012 WL 5944966, at *4 (D. Nev. Nov. 26, 2012) ("The exclusive forum selection clauses in the Broker-Dealer Agreements do not touch upon arbitration or arbitrability directly.").

This, however, is not the law of the Second Circuit. Rather, in this Circuit, "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." Applied Energetics, 645 F.3d at 526. Thus, in Applied Energetics, the second agreement requiring adjudication was held to totally supplant the first agreement providing for arbitration even without specifically using the word "arbitration." Moreover, Supreme Court precedent effectively supports the Second Circuit's approach, because "arbitration is a matter of contract and

a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960).

ACH's second principal contention is that its Statement of Claim filed with FINRA concerns subjects beyond those "arising out of" the Agreement "or any of the transactions contemplated [t]hereby." The Statement of Claim states, in relevant part, "This dispute arises from the business activities of [Citigroup], including, but not limited to, underwriting, financial advice, and broker-dealer activities." Compl. Ex. A at 3. The claim submitted for arbitration mostly concerns alleged wrongdoing by Citigroup in its role as broker-dealer, but to the extent it touches on underwriting or advising, it is still properly the subject of litigation rather than arbitration because the forum-selection clause covers claims "arising out of . . . any of the transactions contemplated" by the Agreement. The same argument advanced here by ACH was rejected in Golden Empire because the defendant's claims there, like here, were "inextricably linked to the Broker-Dealer Agreement" such that the defendant could not "escape application of the Forum Selection Clause." 922 F. Supp. 2d at 443. The merger clause, which unites the "other agreements and instruments executed and delivered in connection with the issuance of the Bonds" with the Broker-Dealer Agreement to constitute "the entire agreement between the parties," extinguishes the possibility that claims arising from the failure of these bonds, even if they sounded more in

8

underwriting or advising, could be addressed by means other than those provided for by the Agreement's forum-selection clause.

Finally, ACH argues that this Court lacks the authority to enjoin an arbitration brought in the Middle District of Florida. It is true that the Federal Arbitration Act prevents a district court from compelling arbitration outside of its own district. See 9 U.S.C. § 4; see, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 328 (7th Cir. 1995) (reiterating that "§ 4 preclude[s] a district court from ordering arbitration to take place outside of its own district, and just as clearly preclude[s] the court from ordering arbitration to take place within its district in contravention of a freely negotiated forum selection clause."). But the venue concerns of compelled arbitration are quite different from enjoining a party from pursuing arbitration. Pursuant to the Agreement, ACH is subject to this Court's personal jurisdiction, and this Court's injunction is thus perfectly effective in halting ACH's pursuit of the Florida arbitration. See NML Capital, Ltd. v. Republic of Argentina, 699 F.3d 246, 263 (2d Cir. 2012) (a court with personal jurisdiction over a party can enjoin that party from engaging in conduct outside of that court's geographical boundaries). Indeed, courts within the Second Circuit routinely enjoin parties subject to their jurisdiction from pursuing arbitrations occurring outside the court's boundaries when they find that the parties have not agreed to arbitrate. See, e.g., In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 139–42 (2d Cir.

2011); <u>Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund,</u> <u>Ltd.</u>, 661 F.3d 164, 174 (2d Cir. 2012).

For the foregoing reasons, ACH is hereby permanently enjoined from further pursuing its arbitration before FINRA and is directed to discontinue that arbitration forthwith. The Clerk of the Court is directed to close item number 4 on the docket of this case, enter final judgment for plaintiff, and close the case.

SO ORDERED.

Dated: New York, NY
March 2ᴄ, 2014

JED S. RAKOFF, U.S.D.J.